Christopher P. Burke, Esq.  ECF Filed on 2/11/2023
218 S. Maryland Parkway
Las Vegas, Nevada 89101
(702) 385-7987
atty@cburke.lvcoxmail.com
Attorney for Debtor
Charles Lazer

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>CHARLES RANDALL LAZER,<br><br><br><br><br>Debtor. | Case No.: 22-11549-MKN<br>Chapter 7<br><br>**MOTION TO DETERMINE WHETHER A POTENTIAL ASSET IS ESTATE PROPERTY AND IN OPPOSITION TO A RULE 2004 EXAMINATION OF RANDY LAZER AND TO DENY TRUSTEE'S REQUEST FOR WAIVER OF ATTORNEY CLIENT PRIVILEGE**<br><br>Date: March 15, 2023<br>Time:2:30 p.m. |

COMES NOW Debtor, Charles Randall Lazer ("Debtor" or "Lazer") and files this Motion to Determine Whether a Potential Asset is Estate Property and in Opposition to the Randazza Legal Groups ("RLG"), Motion for Rule 2004 Examination of Randy Lazer and to Deny Trustees Request for Waiver of Attorney-Client Privilege.

**I**
**Overview**

Attorney RLG is both the attorney for Plaintiff, Ms. Daphne Williams ("Williams") in an adversary, BK No. 22-1125-MKN[1] and also special counsel for the Trustee in an alleged legal malpractice claim against Lazer's former civil attorneys Michael Bohn Esq. ("Bohn")

---

1. Williams' adversary seeks to deny Lazer's discharge of her debt under §523(a)(6).

1

1  and Adam Trippiedi, Esq. ("Trippiedi"), who represented Lazer in the Williams state court
2  case (Bk. Dkt.#23).

3      RLG is requesting a 2004 Examination of Lazer and Trustee, Lenard Schwartzer, is
4  requiring Lazer waive his attorney-client privilege with Bohn and Trippiedi (Ex. 'A'-Decl.
5  C. Burke, ¶4 and ¶5). However, in neither the main bankruptcy case, nor the Williams'
6  adversary, is a Rule 2004 examination appropriate. And Lazer should not have to sign over
7  his attorney-client privilege to the Trustee as he has requested, because any alleged legal
8  malpractice claim would be Lazer's and *not* the bankruptcy estate's.

9      The reason a 2004 is inappropriate in the Williams adversary, which was
10 commenced on August 1, 2022, is because Williams chose to do *no* discovery during the
11 case and the discovery deadline passed on December 28, 2022 (Adv. Dkt.#7, p.1). Now,
12 Williams apparently seeks to cover herself and come in the "back way" by conducting a
13 2004 Examination of Lazer. But the law does not allow for this type of chicanery.

14     In addition, a 2004 examination is an inappropriate means for Trustee's attorney to
15 obtain information for potential legal malpractice lawsuits against Bohn and Trippiedi.
16 Although Trustee may respond that no adversary has been filed against Bohn and Trippiedi,
17 Williams' adversary is inextricably intertwined with that potential lawsuit. Further, as
18 shown below, because any alleged legal malpractice claim against Bohn and Trippiedi is *not*
19 property of the estate, there is no reason for a 2004 examination of Lazer regarding that
20 potential claim.

21     Finally, the Trustee's requested waiver of Lazer's attorney-client privilege is also
22 unnecessary under Nevada law, because, once again, any alleged legal malpractice claim
23 would be Lazer's.

**II**
**Issues**

24
25
26 1. The law is clear, a 2004 Examination is not permitted after an adversary has been
27 filed, because discovery is available. Here, an adversary has been filed by Williams.
28

2

Therefore, no 2004 Examination for Lazer is permitted. Besides, the fact that the discovery time has now passed, does not give rise to a 2004 examination to surplant or supplement discovery.

2. In Nevada, a legal malpractice claim accrues when a party suffers damages. Here, any alleged legal malpractice claim for Randy Lazer will only be known *after* his adversary is decided. And only if Lazer loses, would he allegedly have suffered damages at that point. Since, this event would be determined postpetition, any alleged malpractice claim is Lazer's and not property of his bankruptcy estate.

3. The Trustee seeks a waiver of Lazer's attorney-client privilege with his prior civil attorneys for a potential legal malpractice claim. However, because any alleged malpractice claim will only come about *postpetition*, if Lazer loses in his adversary filed by Williams, it would be Lazer's claim. Therefore, there is no need for the Trustee to request that Lazer agree to waive the privilege.

## III
## Argument

**1. A 2004 Examination is broad**

"The scope of this [2004] examination is admittedly 'unfettered and broad,' and indeed is commonly recognized as more in the nature of a 'fishing expedition'. The purpose of such a broad discovery tool is to assist the trustee in revealing the nature and extent of the estate and to discover assets of the debtor which may have been intentionally or unintentionally concealed. It is properly used as a *pre-litigation* device to determine whether there are grounds to bring an action to determine a debtor's right to discharge or the dischargeability of a particular debt." *In re Bennett Funding Group., Inc.*, 203 BR 24, 28 (Bankr. N.D. N.Y. 1996)(emphasis added). The Rule has also been called "exploratory and grouping." *Sachs v. Hadden*, 173 F.22 929, 931 (2nd Cir. 1949). In essence, it is a tool to be used pre-adversary or for a precontested matter.

1  "Bankruptcy Rule 2004 is designed to be a quick expedition into general matters and issues regarding the administration of the bankruptcy case. . . ." *In re French*, 145 BR 991, 992 (Bankr. D.S.D. 1992). The purpose is to allow inquiry into the debtor's acts, conduct or financial affairs so as to discover the existence and location of assets of the estate. *In re Coffee Cupboard, Inc.*, 128 BR 509, 514 (Bankr. E.D. N.Y. 1991). "Consistent with its function as a 'quick factual fix relative to the estate, its existence and location,' *In re Silverman,* 36 BR 254, 259 (Bankr. S.D. N.Y. 1984), a Rule 2004 examination is normally employed at the pre-litigation stage of a bankruptcy case." *In re Dinubilo*, 177 BR 932, 941 (E.D. Cal. 1993). Thus, "if an adversary proceeding or contested matter is pending . . . Rule 2004 'should *not* be used.'" *In re Blinder Robinson*, 127 BR 267, 274 (D. Colo. 1991)(emphasis added). Here, a 2004 examination is not permitted for Williams adversary.

**2. Pending Proceeding Rule**

When an adversary proceeding or contested matter has been commenced during the bankruptcy, those matters become *pending proceedings* subject to the "pending proceeding rule." The rule stands for the proposition that if an adversary proceeding is pending and related to the instant dispute, then the parties to that proceeding may no longer utilize the liberal provisions of Rule 2004 and should utilize the discovery devices provided for in Rules 7026 through 7037. *See* 9 Resnick and Sommer, *Collier on Bankruptcy* ¶2004.01[1] at 2004-3 (16th ed. 2015). The allowable scope of examination under Rule 2004 is broad, but remains subject to limitations like the "pending proceeding rule." *Id*; *In re Washington Mutual, Inc.*, 408 BR 45, 50 (Bankr. D. Del. 2009).

The concern is that parties could use Rule 2004 examination as a tactic to circumvent the safeguards provided by Rules 7026 through 7037. *Dinubilo*, 177 B.R. at 939-40. However, Federal Rule of Bankruptcy Procedure "2004 is *not* a substitute for discovery authorized in either adversary proceedings or contested matters . . ." *Id* at 942. Therefore, if there is an adversary pending "Rule 2004 'should' not be used. *French*, 145 BR at 992.

4

Because Rule 2004 "is not a substitute for discovery authorized in" an adversary proceeding. *In re Aromax, Inc.*, No. 190-01484 (Bankr. E.D. Cal).

In this case, any Trustee's 2004 Examination, conducted by the Randazza Legal Group, affects both the Williams' adversary and the alleged legal malpractice claim. These matters are part and parcel with one another. In terms of the adversary, it is too late to take a 2004 examination. And as for any alleged legal malpractice claim, it is not the Trustee's, so a 2004 examination is not appropriate for that purpose either.

**3. Any legal malpractice claim is Lazer's**

The Trustee has hired these same attorneys, the Randazza Legal Group to pursue an alleged legal malpractice claim by Lazer against his former civil attorneys. "The party seeking to include property in the estate bears the burden of showing that the item is property of the estate." *In re Neidorf*, 534 BR 369,372 (9th Cir. BAP 2015). "Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979). Therefore, Nevada law controls whether Lazer's alleged legal malpractice claim existed at the time he filed his chapter 7 petition. *Cusano v. Klein*, 264 F.3d 936, 947.

However, under Nevada law, any cause of action for legal malpractice against Bohn and Trippiedi could *not* arise until damages have been sustained. *Semenza v. Nev. Med. Liability Ins. Co.*, 104 Nev. 666, 668 (1988). If damages have *not* been sustained, or it is *too early* to know whether the damages have been sustained, a legal malpractice action is *premature* and should be dismissed. *Id* at 668. Thus, in Nevada, a legal malpractice action cannot accrue until damages have occurred.

Here, although Lazer owes $186,231.30 to Williams and her attorney from the state court lawsuit, that is *not* the damage needed to state a cause of action for legal malpractice. Nor is the fact that Lazer filed bankruptcy the type of damage needed to state a cause of action for legal malpractice. Why? Because, Lazer had approximately $30,000 in other unsecured debt, such as credit cards and medical bills, that he needed to file on and

5

1  discharge anyway, which he did. In addition, this is Lazer's third bankruptcy and any
2  speculation on how, if, or whether, it affected his credit is not quantifiable as a damage.

3      Under Nevada law, no property interest could come into existence until Lazer
4  suffered damages. This has been recognized by both the Ninth Circuit BAP, in *Krohn v.*
5  *Glaser*, No. NV-18-1175 KuTaB, and affirmed by the Ninth Circuit, *In re Glaser*, 2020 WL
6  3536532 (9th Cir. 2020). Therefore, the only potential damage would be if Lazer's debt to
7  Williams is non-dischargeable. Only at that point, which is postpetition, would any
8  potential malpractice damage claim accrue. Thus, any alleged malpractice claim cannot be
9  deemed to have accrued prepetition. *Id*. Because it is not "sufficiently rooted in the
10 prebankruptcy past." *Segal v. Rochelle*, 382 U.S. 375, 379-80 (1966). Here, Lazer could only
11 suffer potential damages post-petition if he loses his adversary proceeding. At that time, it
12 would be Lazer's cause of action, *not* the Trustee's.

13 **4. Deny waiving attorney client privilege**

14     The Trustee also seeks to have Lazer waive the attorney-client privilege so he can
15 investigate this alleged legal malpractice claim. However, as explained above, because any
16 "damage" from Lazer's *alleged* legal malpractice claim would *only* be present if Williams
17 prevailed on her adversary, it would be Lazer's, because the damages would be postpetition.
18 In contrast, if Lazer discharges his debt to Williams, there are no damages for any alleged
19 malpractice claim. Either way, there is no basis to waive the privilege.

## IV
## Conclusion

There is no alleged malpractice claim that could be property of Lazer's bankruptcy estate because any damages will occur postpetition. Therefore, the Court should order, that any alleged malpractice claim against Bohn or Trippiedi, is Lazer's claim and not part of his bankruptcy estate. As such, there is no reason to conduct a Rule 2004 examination on these alleged claims. Thus, based upon this result, waiver of the attorney-client privilege should also be denied.

1   Further, discovery has closed in Williams' adversary versus Lazer. She had a chance, before her adversary, to request one. Then, Williams had her discovery period of 120 days, but decided to forego propounding any. Now it is both inappropriate and too late and she should not be rewarded for her dilatory acts. So again, a Rule 2004 examination is no longer appropriate.

DATED, this 11th day of February, 2023.

RESPECTFULLY SUBMITTED:

*/s/ Christopher P. Burke, Esq.*
Christopher P. Burke, Esq.